Arnold G-. Fraiman, J.
This is an action for a divorce brought by the plaintiff husband who is 77 years old against defendant wife who is 72. The couple were married for 48 years. In 1949 the defendant wife obtained a judgment of separation against the husband, which was amended in 1957. Pursuant to the judgment of separation as amended, the wife has been receiving $60 per week alimony. Plaintiff husband has brought this action for divorce pursuant to subdivision (5) of section 170 of the Domestic Relations Law on the ground that the parties have lived separate and apart pursuant to a judgment of separation for more than two years. The defendant wife, while bowing to the inevitability of Gleason v. Gleason (26 N Y 2d 28 [1970]), seeks an upward revision of the alimony payments she has been receiving on the ground of changed circumstances. Plaintiff husband, without conceding any such changes, has stipulated that he is financially able to pay any reasonable ,sum awarded the defendant in accordance with her present needs.
After a trial at which the defendant wife was represented by a guardian ad litem appointed by Mr. Justice Fino prior thereto, the court granted plaintiff a divorce and found that there were such changed circumstances in defendant wife’s condition that her alimony should be increased to $275 per week. The changed circumstances found by the court were principally two: First, since 1957, defendant who, as noted above, is now 72 years old, has been in and out of mental institutions, and according to uncontradicted medical opinion, now requires round-the-clock supervision if she is not institutionalized. Second, her eyesight has deteriorated substantially since 1957, and she has undergone two operations for cataracts. In addition, she is obviously 14 *656 years older and generally more physically infirm than she was in 1957, and the cost of living has increased substantially since that year.
The court, in a decision dictated from the Bench at the conclusion of the trial, after making the foregoing findings, awarded alimony to defendant in the sum of $275 per week, and directed that such sum be paid during plaintiff’s lifetime, but in the event plaintiff predeceased the defendant, the alimony was to continue as a charge against plaintiff’s estate, for defendant’s lifetime.
Subsequent to the trial, but before any judgment was entered, plaintiff’s counsel pointed out to the court that under the case law in New York, alimony may not be a continuing obligation against the estate of the deceased husband. (Johns v. Johns, 44 App. Div. 533, affd. 166 N. Y. 613; Wilson v. Hinman, 182 N. Y. 408.) For this reason, the court is rendering this supplemental decision by which it modifies its prior decision to the extent indicated ibelow.
If the parties were young or even middle aged and in good health, the mere provision for alimony in a stated sum per week would be an appropriate resolution of the wife’s financial needs. However, here plaintiff husband is 77 and defendant is 72. According to the mortality tables, plaintiff has a life expectancy of approximately 7 years and defendant a life expectancy of 11 years. What is to become of defendant when, as is likely, plaintiff predeceases her? Unless some provision is made for her continuing support by her husband after his death, this innocent party to a divorce she never envisaged when she obtained a judgment of separation 23 years ago, will become a charge upon the State. While it is true that the Court of Appeals in Gleason stated that it was up to the Legislature to cure any inequity resulting from the loss of inheritance rights by an innocent party to a divorce, the court there was not confronted with the instant situation. Here we have a physically and mentally infirm woman in the twilight of her life who is being deprived of her inheritance rights after almost a half century of marriage. On plaintiff’s death, she will be literally turned out into the street to become a public charge. As a court of equity, this court cannot ignore the inevitable fate of this woman unless some provision is made for her support after plaintiff’s death. Accordingly, although mindful of the decisions cited herein, the court directs that defendant be paid alimony in the amount of $275 per week, commencing October 1, 1971, to be paid in trust to Stanley Winter, defendant’s son. Said alimony is to continue for defendant’s life. To insure its continuance after the death of plaintiff, *657 should he predecease her, plaintiff is directed to purchase an annuity for defendant at this time which would realize such an amount during her lifetime, or in the alternative, on plaintiff’s death, should he predecease defendant, his executor or administrator is to purchase such an annuity out of the assets of his estate.
The situation herein is somewhat analogous to that wherein a party obtains an annulment of a marriage on the ground of incurable insanity, under section 141 of the Domestic Relations Law. In such case, the support of the insane person during her lifetime is assured by making it a continuing charge on the estate of her spouse in the event he predeceases her. The reasoning of the Legislature in so providing is equally applicable to the instant case.
In the decision of the court dictated from the Bench, counsel for defendant and her guardian were requested to submit affidavits in support of their fees. Pursuant thereto, counsel submitted an affidavit in which he indicated he had received a $5,000 retainer fee from defendant, and sought an additional $10,000 for his services, plus $193.38 in disbursements. The court concludes that the retainer fee of $5,000 was reasonable compensation for counsel, and he is also entitled to $193.38 in disbursements. While the court believes the plaintiff husband should be obligated to reimburse defendant for the $5,000 retainer fee she paid, in addition to paying for her attorney’s disbursements, it is precluded from so directing by the recent ruling of the Appellate Division, First Department, in Kami v. Kann (38 A D 2d 545). It was held in that case that where a wife has paid a retainer fee to her attorney to defend a matrimonial action, she is not entitled to an award of counsel fees under section 237 of the Domestic Relations Law. Whether a third person who may have advanced the retainer fee to defendant in the instant case on the strength of the husband’s credit, has an action against him for necessaries depends on the facts. With respect to the guardian ad litem, on the basis of the affidavits submitted, the court grants him a fee of $2,500 as the reasonable value of his services, plus $42.04 in disbursements.